UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

QUADREN WILSON,

      Plaintiff,

    v.

MARK WAGNER
and NATHAN PESKIE,

      Defendants.

Case No. 3:25-cv-00081-jdp

---

**BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT BY PLAINTIFF QUADREN WILSON**

---

NOW COMES Plaintiff Quadren Wilson ("Wilson"), by his attorneys, THE
SULTON LAW FIRM LLC, by Attorney William F. Sulton, and submits the below brief
in opposition to Defendants Mark Wagner's ("Wagner") and Nathan Peskie's
("Peskie") motion for summary judgment. (Dkts. 11, 15.)

## INTRODUCTION

This case involves the use of near-lethal force against Wilson, an unarmed
man who was shot in the back while attempting to comply with police commands.
Defendants Special Agents Wagner and Peskie seek summary judgment, arguing
their actions were objectively reasonable and protected by qualified immunity.
However, their narrative relies on a version of facts that is sharply disputed by
the record. Because a reasonable jury could find that Agents Wagner and Peskie

[1 / 17]

used excessive force in violation of clearly established law, their motion must be denied.

## STATEMENT OF FACTS

1. **Unarmed Status:** Wilson was unarmed at the time of the incident, possessing neither a firearm on his person nor one within the vehicle he was operating.  (Dkt. 22 at ¶1; Dkt. 23 at ¶6.)

2. **Hands-Free Status:** Wilson testified that his phone was plugged into the car stereo and resting in a cup holder.   He explicitly stated that nothing was in his hands while he was speaking.  (Dkt. 22 at ¶2; cf. Dkt. 14 at ¶33.)

3. **Compliance with Commands:** When officers surrounded his vehicle and ordered him to put his hands up, Wilson testified that he complied immediately and raised his empty hands.  (Dkt. 22 at ¶3; Dkt. 23 at ¶48.)

4. **Lack of Warning Before Shots:** Wilson testified that within seconds of putting his hands up, he heard an officer yell "gun," and shots were fired immediately thereafter. (Dkt. 22 at ¶4; Dkt. 13 at ¶74.)

5. **Defensive Posture:** Upon hearing the shout of "gun," Wilson dove toward the passenger side of the vehicle in an attempt to protect himself from the gunfire.  (Dkt. 22 at ¶5.)

6. **Location of Injuries:** The physical evidence of the shooting includes a gunshot wound to Wilson's back, with a bullet lodged near his spine.  (Dkt. 22 at ¶6.)

7. **Absence of Sirens or Lights:** Wilson stated that as the police truck backed into him, there were no emergency lights, sirens, or other indications that the vehicle was operated by law enforcement rather than a regular citizen. (Dkt. 22 at ¶7.)

8. **Physical Impossibility of Escape:** Although Wilson admitted to "rocking" the car and hitting the gas out of shock and fear, he maintained that his vehicle was completely "pinned" between two large trucks and could not have moved to endanger the officers. (Dkt. 22 at ¶8; Dkt. 23 at ¶¶41–44.)

9. **Law Enforcement Acknowledgment of Status:** Wilson testified that while he was still inside the vehicle after being shot, he heard an officer acknowledge his condition by stating, "He's fucking hit. He's hit." (Dkt. 22 at ¶9.)

10. **No Direct Observation of a Weapon:** No firearm was recovered from Wilson or his vehicle. (Dkt. 22 at ¶10; Dkt. 13 at ¶45.)

11. **Mechanical Cause of Alleged Perception:** The "forceful impact" and "loud noise" that led Wagner to believe he had been shot at by Wilson were likely caused by a fellow officer's use of a Halligan tool to breach the vehicle window. (Dkt. 22 at ¶11; Dkt. 13 at ¶¶45–47.)

12. **Shooting of a Non-Aggressor:** Despite Wilson being unarmed, Wagner fired his handgun toward the vehicle as he fell, and Peskie fired a rifle volley into Wilson's lower back area. (Dkt. 22 at ¶12; Dkt. 14 at ¶35.)

13.   **Lack of Visibility:** Agents Wagner and Peskie both admitted that their ability to see inside the vehicle was significantly obstructed by tinted windows and intense sun glare.  (Dkt. 22 at ¶13; Dkt. 13 at ¶37; Dkt. 14 at ¶31.)

14.   **Ambiguous Object:** While Agent Peskie believed he saw a black rectangular object in Wilson's hand that he interpreted as a firearm muzzle, Wilson's testimony indicates his phone was plugged into the car stereo in the center console area.  (Dkt. 22 at ¶14; cf. Dkt. 14 at ¶33.)

15.   **Vulnerable Position of Subject:** Peskie fired the shots that struck Wilson while Wilson was "flinching and falling across the console" of the vehicle. (Dkt. 22 at ¶15; Dkt. 14 at ¶35.)

16.   **Reliance on Disputed Information:** The decision to use high-risk S.I.C. maneuvers and lethal cover was based on pre-operational "beliefs" and informant data that Wilson was always armed, rather than observed conduct during the specific encounter on February 3, 2022.  (Dkt. 22 at ¶16; Dkt. 23 at ¶6; cf. Dkt. 13 at ¶7.)

17.   **Rapid Escalation:** Only "a few seconds" passed from the time the agents reached the driver's side window until they opened fire on Wilson.  (Dkt. 22 at ¶17; Dkt. 13 at ¶74.)

18.   **Aggressive Operational Strategy:** The agents utilized a "Subject in Custody" (S.I.C.) maneuver, which Agent Wagner himself described as a "dangerous technique" typically used only as a last resort.  (Dkt. 22 at ¶18; Dkt. 13 at ¶18.)

## STANDARD OF REVIEW

Summary judgment is permitted where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, the Court must view the evidence in the light most favorable to the non-moving party and may grant the motion only if no reasonable juror could find for that party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 47-248, 255 (1986); *Schuetta v. Aurora Nat'l Life Assurance* Co., 27 F. Supp. 3d 949, 955-56 (E.D. Wis. 2014), citing Fed. R. Civ. P. 56(a). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *Schuetta,* 27 F. Supp. 3d at 956, citing *Anderson,* 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

For purposes of this motion, the Court cannot weigh the evidence or decide which set off acts is more credible. *Mccann v. Iroquois Mem. Hosp.,* 622 F .3d 7 45, 752 (7th Cir. 2010). When ruling on a motion for summary judgment, "a court may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a factfinder." *Id.*; *see also Payne v. Pauley,* 337 F.3d 767, 770 (7th Cir. 2003) (Credibility determinations and weighing of the evidence ". . . are jobs for a factfinder."). The Court's only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial."

*Waldridge v. Amer. Hoescht Corp.,* 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable factfinder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne,* 337 F.3d at 770. The evidence, and all inferences, are viewed in the light most favorable to the nonmoving party. *Anderson,* 477 U.S. at 255; *Equip, Inc. v. Smith-McDonald Corp.,* 655 F.2d 115, 118 (7th Cir. 1981); *Wrayv. Nat'l R.R. Passenger Corp. ,* 10 F.Supp.2d 1036, 1039 (E.D. Wis. 1998) (*citing Matsushita Elec. Indus.* Co. *v. Zenith Radio Corp.,* 4 75 U.S. 57 4, 587 (1986)).

Additionally, the Seventh Circuit has held that police officers are not entitled to qualified immunity when the facts related to the underlying constitutional violation are disputed. *Dufour-Dowell v. Cogger*, 152 F.3d 678, 680 (7th Cir. 1998) ("Because the facts are in hot dispute, the officers cannot seek pretrial refuge behind a claim of qualified immunity. Raising a defense of qualified immunity in the face of disputed facts that control the answer to the question is a waste of everybody's time."); *Omdahl v. Lindholm*, 170 F.3d 730, 734 (7th Cir. 1999) ("[W]hether the [plaintiffs] can establish the existence of a constitutional violation turns on how a fact-finder resolves the question of fact regarding deadly force. The existence of a factual dispute prevents us from resolving the issue."); *Gonzalez v. City of Elgin*, 578 F.3d 526, 541 (7th Cir. 2009) (qualified immunity not appropriate where there are disputed issues of fact as to the force used).

Other district courts have similarly ruled that "[i]f the legal question of qualified immunity is dependent upon which view of the facts is accepted by the trier of fact, then summary judgment is not appropriate on the issue of qualified immunity." *Estate of Fields v. Nawotka*, 2008 WL 746704, *7 (E.D. Wis. Mar. 18, 2008) (*citing*, among other cases, *Cowan ex rel. Estate of Cooper v. Breen*, 352 F.3d 756, 762-63 (2d Cir. 2003); *Adam v. Metiva*, 31 F.3d 375, 387 (6th Cir. 1994); *Estate of Starks v. Enyart*, 5 F.3d 230, 234-35 (7th Cir. 1993); *DeJohnette v. Lipinski*, 1997 WL 137177, at *3 (N.D. Ill. Mar. 24, 1997), and *Estate of Bryant v. Buchanan*, 883 F.Supp. 1222, 1227 (S.D. Ind.1995). Indeed, "[q]ualified immunity in cases involving claims of deadly force is difficult to determine on summary judgment because liability turns upon the Fourth Amendment's reasonableness test." *Sova v. City of Mt. Pleasant*, 142 F.3d 898, 902 (6th Cir. 1998).

## ARGUMENT

Because Agents Wagner's and Peskie's motion rests on a version of facts that ignores Wilson's testimony and physical evidence, there are genuine issues for trial. The Court should deny the motion for summary judgment accordingly.

1. **A genuine dispute of material fact exists regarding the reasonableness of force.**

Under the Fourth Amendment, whether an officer's use of force is consistent with the Constitution depends on whether it was objectively reasonable under the totality of the circumstances. While Defendants argue their actions were justified by a perceived deadly threat, the record contains "sharp factual disputes" that go

to the heart of the *Graham v. Connor* analysis.  490 U.S. 386 (1989); *see* Dkt. 22 at ¶¶1–4, 8, 14; Dkt. 23 at ¶¶41–44, 48–50; *cf.* Dkt. 14 at ¶33.

Defendants claim they were forced to fire because Wilson "refused repeated commands to show his hands." (Dkt. 15 at 2; Dkt. 13 at ¶¶38–39; Dkt. 14 at ¶¶29–31.)  However, Wilson testified that he "complied immediately" and "raised his empty hands" as soon as he was ordered to do so.  (Dkt. 22 at ¶3; Dkt. 23 at ¶48.) If a jury accepts Wilson's testimony, the fundamental premise of the Defendants' threat assessment—that he was hiding his hands to access a weapon—collapses.

Agent Peskie asserts he fired because he saw a "black square or rectangular object" in Wilson's hand that he "believed was the muzzle of a firearm."  Wilson's testimony offers a contradictory and far more benign reality: his phone was "plugged into the car stereo" and resting in a cup holder, and he was "unarmed" with "nothing in his hands." (Dkt. 22 at ¶¶1–2, 14; *cf.* Dkt. 14 at ¶33.)

A central pillar of the defense is the claim that Wilson was "violently" attempting to break "vehicle containment."  Wilson disputes this characterization of the danger, testifying that his vehicle was "completely 'pinned' between two large trucks" and was physically incapable of moving in a way that could "endanger the officers."  (Dkt. 22 at ¶8; Dkt. 23 at ¶¶41–44.))

Agent Wagner's decision to fire was triggered by a "forceful impact" and a "loud sound" that he interpreted as Wilson firing a gun at him. Yet, the defense's own experts and post-incident investigation reveal a different source: the impact was likely caused by a "fellow officer's use of a Halligan tool" to breach the window.

A jury must decide if it is "objectively reasonable" for a veteran agent to mistake his own team's tactical equipment for enemy gunfire. (Dkt. 22 at ¶11; Dkt. 13 at ¶¶45–47.)

Both Defendants admit that their ability to see Wilson's movements was "significantly obstructed" by "tinted windows" and "intense sun glare." This lack of visibility undercuts the "objectivity" of their perceptions, suggesting that the agents filled in the visual gaps with disputed pre-operational beliefs rather than observed reality. (Dkt. 13 at ¶37; Dkt. 14 at ¶31; Dkt. 16 at ¶46.) Because reasonable minds could differ as to whether the officers' perceptions were a product of a tense situation or a result of "unreasonable" tactical errors and misinterpretations, these material facts must be resolved by a jury, not by the Court at summary judgment.

### 2.    Defendants are not entitled to qualified immunity.

Summary judgment on the basis of qualified immunity is inappropriate because, under Wilson's version of the facts, Defendants violated clearly established constitutional rights of which any reasonable officer would have known. While Defendants rely on *Manery v. Lee* to argue the law was not clearly established, that case is factually distinct from the encounter involving Wilson. If a jury accepts Wilson's testimony that he complied immediately and raised empty hands, no reasonable officer could believe that opening fire with a handgun and a rifle was lawful.

Defendants' reliance on *Manery v. Lee* is misplaced. 124 F.4th 1073 (7th Cir. 2025). In *Manery*, the suspect ignored commands, started his vehicle, and twice struck police vehicles before shots were fired. *Id.* at 1077. Here, Wilson testified to immediate compliance and maintains that his vehicle was "pinned" and physically incapable of moving to endanger the officers. (Dkt. 22 at ¶¶3, 8; Dkt. 23 at ¶¶41–44, 48–50.)

Under *Estate of Starks v. Enyart,* it was clearly established that Defendants cannot shoot into a car that did not put them in harm's way. An officer who shoots a suspect in an effort to protect themself cannot escape liability if the danger he faced was created by his own unreasonable conduct. *Starks*, 5 F.3d at 234; *accord Catlin v. City of Wheaton*, 574 F.3d 361, 369 n. 7 (7th Cir. 2009); *Sledd v. Lindsay*, 102 F.3d 282, 287–88 (7th Cir. 1996); *Alexander v. City and County of San Francisco*, 29 F.3d 1355, 1366 (9th Cir. 1994); *see also Allen v. Muskogee*, 119 F.3d 837, 840 (10th Cir. 1997) (holding that officer is liable for excessive force if his or her own "reckless or deliberate conduct during the seizure unreasonably created the need to use such force"); *Sevier v. City of Lawrence*, 60 F.3d 695, 699 (10th Cir. 1995) (same).

Here, a reasonable jury could conclude that Defendants "unreasonably created the encounter that led to the use of force." *Sledd*, 102 F.3d at 288.

> ". . . if the jury believed the plaintiff's story that the officer jumped in front of the moving car, it could find that the officer essentially forced the situation by placing Starks—involuntarily—in a position in which he now posed a deadly threat to the officer. If that were true, the

officers cannot escape liability on the grounds that the shooting was a reasonable exercise of force. The point of Starks is that deadly force is allowed in order to prevent injury or death. An officer cannot unreasonably create circumstances in which injury or death would occur and then claim to be "preventing" that injury by using deadly force. As the court explained, "Police officers who unreasonably create a physically threatening situation in the midst of a Fourth Amendment seizure cannot be immunized for the use of deadly force."),

*Estate of Brown v. Thomas*, 7 F.Supp.3d 906, 910 (E.D. Wis. 2014) (*citing Starks*, 5 F.3d at 234).

This court previously decided a similar case whereby an officer shot into a moving vehicle where the officer alleged a belief that a suspect in a vehicle was going to hit him. *Estate of Fields v. Nawotka*, 2008 WL 746704 (E.D. Wis. Mar. 18, 2008). In *Fields*, the court specifically noted, "If Nawotka's beliefs are reasonable, he did not exercise excessive force. However, whether Nawotka's beliefs are reasonable depends upon disputed issues of fact, including the movement of Justin's vehicle and the position of Nawotka in relation to Justin's vehicle, particularly at the time that he fired his weapon." *Id.*, 2008 WL 746704, *5. If the Court accepts Wilson's version of the facts and all reasonable inferences for summary judgment purposes, which it must, *Starks*, 5 F.3d at 232, then the court must accept that the car was not accelerating toward Defendants.

Also consider the Sixth Circuit's decision in *Lewis v. Charter Township or Flint and Needham*. 660 Fed. Appx. 339 (6th Cir. 2016). In *Lewis,* the plaintiff got into a car and started it, in contradiction to officer commands. *Id.*, at 341. The

Sixth Circuit reiterated that "[t]here is longstanding precedent holding that it is unreasonable for an officer to use deadly force against a suspect merely because he is fleeing arrest; rather, such force is only reasonable if the fleeing suspect presents an imminent danger to the officer or others in the vicinity." *Id.*, at 346. "[T]he fact that a situation is rapidly evolving 'does not, by itself, permit [an officer] to use deadly force[.]'" *Id.*, at 345 (*citing Godawa v. Byrd*, 798 F.3d 457 at 466.

While qualified immunity allows for "reasonable mistakes," the mistake here—interpreting the noise of a partner's Halligan tool as suspect gunfire—is a question of objective reasonableness for a jury to decide. An officer cannot claim immunity for a mistake of fact that is rooted in tactical negligence or a failure to observe a compliant person.

*Mason-Funk v. City of Neenah* involved a hostage situation and is distinguishable. 895 F.3d 504 (7th Cir. 2018). In this case, Wilson testified that he immediately complied with commands by raising his empty hands, and he was notably unarmed both on his person and within his vehicle. Unlike the ambiguity often found in qualified immunity cases cited by Defendants, Wilson's vehicle was "pinned" between two trucks, making escape physically impossible and reducing the immediate threat to officers. Furthermore, while Defendants claimed to perceive a threat, their visibility was admittedly obstructed by tinted windows and intense sun glare, and the "loud noise" interpreted as gunfire was likely a fellow officer using a Halligan tool to breach a window. Because Wilson was shot

in the back while in a defensive posture following his initial compliance, these facts suggest a lack of an immediate, objectively reasonable threat that would justify the rapid escalation to lethal force under the *Mason-Funk* framework.

In *Doxtator v. O'Brien*, the Seventh Circuit considered whether officers' pre-seizure conduct—such as failing to use sirens or follow proper training—was the proximate cause of a fatal shooting.    39 F.4th 852 (7th Cir. 2022). While the agents in this case similarly failed to use emergency lights or sirens when initiating the high-risk S.I.C. maneuver, the distinguishing factor is Wilson's immediate and visible surrender.   Unlike a suspect whose ambiguous pre-seizure flight might complicate the reasonableness inquiry, Wilson testified that he complied with orders by raising his empty hands.   Furthermore, while Defendants relied on pre-operational "beliefs" that Wilson was armed, the actual encounter revealed he was unarmed and "pinned" between vehicles, rendering him incapable of flight or vehicular assault.   Wilson's shooting was not merely the result of a poorly executed tactical approach as debated in *Doxtator*, but was triggered by a mechanical misperception—a fellow officer's Halligan tool breaking a window—which led to Wilson being shot in the back while in a defensive, non-aggressive posture.

Even without a factually identical case, qualified immunity is denied in "obvious cases" where the conduct so clearly violates constitutional norms that no specific analog is required.  *Leiser v. Kloth*, 933 F.3d 696, 701 (7th Cir. 2019).

Shooting an unarmed, compliant man in the back while he is falling away from officers qualifies as such an obvious violation.

Defendants' claim of a "deadly threat" is based on Agent Peskie's perception of a "black square or rectangular object." Wilson's testimony provides a mundane explanation—his phone was plugged into the stereo in the center console—and he explicitly stated nothing was in his hands. A jury must determine if Defendants' interpretation of these movements was a reasonable split-second judgment or an unreasonable escalation.

Defendants justify their high-risk approach based on pre-operational briefings and informant data. However, clearly established law requires that the use of force be justified by the *actual* circumstances confronting the officer at the moment force is used, not merely by a suspect's reputation or criminal history. *Barnes v. Felix*, 605 U.S. 73 (2025) (Although earlier facts and circumstances may inform how an officer responds to later ones, the "climactic moment" of force must still be objectively reasonable.); *Henning v. O'Leary*, 477 F.3d 492 (7th Cir. 2007) (This case reinforces that deadly force is reasonable only when the officer has "reasonable cause to believe" the suspect poses a danger of serious bodily harm based on the unfolding situation.).

3.     **The severity of the injuries highlights the excessive nature of the force.**

Defendants' argument rests on a "split-second" perception of danger, yet the physical evidence and the nature of the force used suggest a response that was

[14 / 17]

both reckless and gratuitous. When the facts are viewed in the light most favorable to Wilson, the totality of the circumstances reveals an operation that escalated into an unconstitutional application of lethal force against a non-threatening person. (Dkt. 22 at ¶¶1–4, 6, 8, 11–12, 17; Dkt. 23 at ¶¶40–44, 48–50; cf. Dkt. 13 at ¶¶33–35, 37, 45–47, 74; Dkt. 14 at ¶¶27, 31, 33, 35.)

While Defendants claim they perceived a "deadly threat," it is undisputed that Wilson was unarmed. (Dkt. 22 at ¶1; Dkt. 13 at ¶45.) Wilson testified that his hands were raised and empty when the agents opened fire. (Dkt. 22 at ¶¶2–3; Dkt. 23 at ¶48.) In addition, Wilson's injuries are inconsistent with the Defendants' description of an active, front-facing threat. The physical evidence shows that Wilson sustained a gunshot wound to his back. (Dkt. 22 at ¶6; Dkt. 14 at ¶35.)

Agent Peskie admitted to firing a rifle volley into Wilson while the latter was already "flinching and falling across the console." Firing upon a person who is clearly collapsing and moving away from a perceived confrontation is not the behavior of a reasonable officer attempting to neutralize a threat; it is the use of force against a vulnerable, retreating individual. (Dkt. 22 at ¶15; Dkt. 14 at ¶35.)

Defendants now concede that the "forceful impact" and "loud noise" Agent Wagner believed to be gunfire were likely caused by a fellow officer's own equipment—a Halligan tool—striking Agent Wagner's shield during a window breach. (See Dkt. 22 at ¶11; Dkt. 13 at ¶¶45–47.) While the Fourth Amendment allows for reasonable mistakes, a jury could easily find it objectively unreasonable

[15 / 17]

for two highly trained agents to mistake their own team's tactical entry tools for a suspect's firearm, especially when that suspect's hands were raised. (Dkt. 22 at ¶¶2–3; Dkt. 23 at ¶48.)

Wilson testified that he heard no sirens or emergency lights and was given no warning before the agents began shooting, other than an officer shouting "gun" immediately before firing. The failure to provide a feasible warning before using deadly force further weighs against the reasonableness of Defendants' conduct. (Dkt. 22 at ¶¶4, 7; Dkt. 23 at ¶37.)

Although agents claimed they feared a vehicular attack, Wilson maintains the S.I.C. maneuver was so effective that his vehicle was completely "pinned" and incapable of moving to endanger the officers. A reasonable jury could conclude that the officers faced no actual danger from the immobilized vehicle. (Dkt. 22 at ¶8; Dkt. 23 at ¶¶41–44.)

The severity of the force—resulting in a bullet lodged near Wilson's spine—was disproportionate to the actual circumstances on the scene. Because the "threat" perceived by the agents was a product of their own tactical errors and a failure to observe Wilson's actual, compliant behavior, summary judgment is improper.

## CONCLUSION

Because Defendants' motion rests on a version of facts that ignores Wilson's testimony and physical evidence, there are genuine issues for trial. The Court should deny the motion for summary judgment accordingly.

Date: May 1, 2026.                              Respectfully submitted,


/s/ William F. Sulton
WILLIAM F. SULTON
THE SULTON LAW FIRM LLC
2745 N. Dr. Martin Luther King Jr. Drive
Suite 202
Milwaukee, WI 53212
414-307-4693 (direct)
414-973-8844 (fax)
william@sultonlaw.com

Counsel for Plaintiff