IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

QUADREN WILSON,

      Plaintiff,

      v.

MARK WAGNER and
NATHAN PESKIE,

      Defendants.

Case No. 25-CV-0081

---

**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION FOR
SUMMARY JUDGMENT**

---

## INTRODUCTION

Wilson has failed to meet his burden to overcome Defendants' qualified immunity defense. Even viewed in the light of Plaintiff's version of events, and including all undisputed facts, Plaintiff has not identified any existing precedent that squarely governed Agent Peskie and Wagner's actions here. Summary judgment must be granted on this basis. In addition, no reasonable jury could find on these facts that the use of force was unreasonable under the Fourth Amendment, and therefore summary judgment must be granted on the merits of Plaintiff's claim.

## ARGUMENT

### I.    Wilson has failed to meet his burden to overcome the qualified immunity defense.

Qualified immunity is an affirmative defense, but plaintiffs carry the burden of defeating it once it is raised. *Archer v. Chisholm,* 870 F.3d 603, 613 (7th Cir. 2017).

Qualified immunity applies unless two elements are met. First, the evidence construed in the light most favorable to the plaintiff must support a finding that the defendant violated the plaintiff's constitutional right. Second, that right must have been clearly established at the time of the violation. *Day v. Wooten*, 947 F.3d 453, 460 (7th Cir. 2020)

The second prong of the qualified immunity analysis ensures that a government official is held liable only when the contours of the right allegedly violated are "sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Manery v. Lee*, 124 F.4th 1073, 1080 (7th Cir. 2025)(citations omitted).

Recently, in *Manery*, the Seventh Circuit held that the assertion that it is "clearly established that deadly force cannot be used when there is no longer an imminent threat of danger" . . . "defines the constitutional right at too high a level of generality." M*anery*, 124 F.4th at 1080 citing *Brumitt v. Smith*, 102 F.4th 444, 448 (7th Cir. 2024) ("[F]raming the right as the right to be free from force once subdued is impermissibly broad."). "[S]pecificity is especially important in the Fourth Amendment context" because "it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *Id*. quoting *Kisela v. Hughes*, 584 U.S. 100, 104, 138 S.Ct. 1148, 200 L.Ed.2d 449 (2018) (per curiam) (alteration in original) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12, 136 S.Ct. 305, 193 L.Ed.2d 255 (2015) (per curiam)). Because the inquiry into whether an officer used excessive force is highly fact-dependent, "police

officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* quoting *Mullenix*, 577 U.S. at 13, 136 S.Ct. 305.

Here, even assuming the disputed facts in a light most favorable to Wilson, and applying the undisputed facts as admitted by Wilson, qualified immunity applies. Wilson relies on his testimony at the Wagner criminal trial, and particularly his testimony that when the officers yelled to put his hands up, that he immediately put his hands up. (Dkt. 17-1 at 9:25-10:2.) Wilson testified that his cell phone was plugged into the car stereo and was in the cup holder, and he was speaking hands free through the car stereo. (Dkt. 17-1 at 8:4-12.) Wilson also cites his testimony that when he heard the word "gun" he "dove towards the passenger side". (Dkt. 17-1 at 9:25 -10:22). Wilson also relies on his testimony for his perception that his car was pinned by the two police trucks because he "was hitting the gas, like I couldn't do nothing." (Dkt. 17-1 at 12:11-22.) He testified he was "stuck" like a "cat between two elephants." (Dkt. 17-1 at 94:10-17.)

Plaintiff also concedes that smoke was coming from his squealing tires. (Dkt. 23 ¶ 98.) Plaintiff concedes that he accelerated and was rocking the vehicle. (Dkt. 23 ¶ 89.) Wilson also admitted on cross-examination that he was "gunning that car" and "had the pedal to the metal on it" and "going from reverse to forward, rocking those cars back and forth." (Dkt. 17-1 95:21 – 96:4). There is also no dispute that only a few seconds passed from the time the agents reached the driver's side window until they opened fire on Wilson. (Dkt. 22 ¶ 17.) There is also no dispute that the Halligan tool

was the likely cause of the forceful impact, loud noise, and shattered glass Wagner perceived in that moment. (Dkt. 23 ¶ 81.) There is also no dispute that Wagner fell back with much force as he had landed on the other side of the median. (Dkt. 23 ¶ 101.)

Assuming Wilson's version as outlined above, and including all of these undisputed facts, Wilson cannot meet his burden to defeat the qualified immunity defense. In his opposition brief Plaintiff argues that the cases cited by the Defendants in support of qualified immunity are distinguishable, but that is not sufficient to defeat qualified immunity. Plaintiff cannot just distinguish cases;  Plaintiff fails to affirmatively identify "existing precedent [that] squarely governs the facts and circumstances that confronted" Peskie and Wagner. *Mason-Funk v. City of Neenah,* 895 F.3d 504, 509 (7th Cir. 2018). Indeed, the case law cited by Plaintiff supports qualified immunity here.

In *Manery*, as here, the arrest team parked their vehicles on either side of the plaintiff's Jeep to block it, and then one officer approached the Jeep's driver's side window while another approached the passenger side. *Id* at 1077. The officers then ordered Manery to show his hands. *Id*. Instead of complying, Manery put his hands in and out of his pockets, started the Jeep, reversed, struck a police vehicle, hit a curb, then moved forward and struck another police vehicle. *Id*. The officer fired a total of nine shots at Manery within seconds of that second collision, and the entire encounter unfolded in less than a minute. *Id*. Even accepting Manery's version of events for purposes of the interlocutory appeal, the Seventh Circuit held the officer was entitled

4

to qualified immunity. *Id*. at 1080-81.  The court explained that Manery defined the right at too high a level of generality by arguing that deadly force cannot be used once there is no longer an imminent threat and found that none of the cases cited by Manery squarely governed the specific facts confronting the officer.

If qualified immunity applied there, it applies with even greater force on the undisputed facts of the present case. Like the officer in *Manery*, Defendants were confronting a suspect known to be dangerous, believed to be armed, and viewed as a serious flight risk. Plaintiff disputes that he fit that description, but he does not dispute that Wagner and Peskie had received that information during the briefing that morning. (Dkt. 23 ¶¶ 4-11.)  Like *Manery*, this encounter involved a fast-moving arrest and a boxed-in vehicle.

Moreover, here Wilson was not merely trying to drive out of confinement. Wilson's version of events is that his car was pinned and therefore he could not escape, but this is his own perception only, and even if true, that did not terminate the threat to the officers or public. Indeed, in *Manery*, the Seventh Circuit assumed that the collision in that case prevented the Plaintiff from continuing to drive forward. 124 F.4th at 1081 n.16. Moreover, Wilson admits smoke was coming from his squealing tires. (Dkt. 23 ¶ 98.) Wilson admits through his sworn testimony that he was "hitting the gas" and "had the pedal to the metal on it" and "going from reverse to forward, rocking those cars back and forth." (Dkt. 17-1 at 12:11-22; 95:21 – 96:4).

Plaintiff tries to distinguish *Manery* by arguing that the Plaintiff in that case was putting his hands in and out of his pocket, but by admitting to going from reverse

5

to forward, Wilson admits to shifting gears with the gear shifter, meaning at least one hand was not always visible. Moreover, in *Manery* the officer shot the Plaintiff as he was driving the vehicle, smashing into the police vehicles, just like Wilson admits to here. Further, under Wilson's own version of events, unlike in *Manery*, before Agent Peskie shot, he "dove towards the passenger side". (Dkt. 17-1 at 9:25 -10:22). While Wilson contends that he dove to avoid gunfire, under his own version of events, he admits to a furtive movement out of Agent Peskie's line of sight, providing further danger to the officers during this rapidly escalating and dangerous encounter. The Seventh Circuit applied qualified immunity in *Manery*, and based on the facts as alleged and admitted by Plaintiff, must do so here.

Further, here there was a reasonable mistaken belief by the officers that Wilson was armed. "Qualified immunity can apply in the event [that a] mistaken belief [about the use of force] was reasonable" under the circumstances. Accordingly, police officers get the benefit of the doubt—"a kind of double deference"—in excessive-force cases. *Weinmann v. McClone*, 787 F.3d 444, 450 (7th Cir. 2015). Wilson fails to point to any case law addressing a situation similar to the significant factor here—the reasonable belief by Agents Peskie and Wagner that Wagner had been shot.

There is no dispute that the Halligan tool was the likely cause of the forceful impact, loud noise, and shattered glass that caused Wagner to fall back with so much force that he landed on the other side of the median. (Dkt. 23 ¶ 101.) In the face of this scenario, the appearance that Wagner had been shot, and requiring split-second decision-making, Plaintiff offers no case law holding that the officers violated clearly

6

established rights by firing at Wilson. Indeed, Seventh Circuit case law, as cited by the Defendants, holds the opposite. *See e.g., Sherrod v. Berry*, 856 F.2d 802 (7th Cir. 1988) (en banc) (holding that under circumstances of the case, fact that suspect was unarmed was irrelevant to excessive force claim where officer reasonably believed he was armed); *Mason-Funk*, 895 F.3d 504, 509 (granting qualified immunity where officers mistakenly shot hostage instead of perpetrator); *Doxtator v. O'Brien*, 39 F.4th 852, 861–65 (7th Cir. 2022) (granting qualified immunity on both prongs of the test to officer who shot and killed an unarmed jail detainee who had led officers to believe that he had a gun).

The other cases cited by Wilson do not "squarely governs the facts and circumstances that confronted Peskie and Wagner." 895 F.3d at 509. *Sledd* involved officers entering a residence at night without announcing themselves. *Sledd v. Lindsay*, 102 F.3d 282, 288 (7th Cir. 1996). *Catlin* involved officers forcefully arresting a motorcyclist without identifying themselves as officers, and the Seventh Circuit applied qualified immunity. *Catlin v. City of Wheaton*, 574 F.3d 361, 368 (7th Cir. 2009). *Scott* involved a plaintiff driving away from an officer, unlike Wilson (or Manery) who were not driving away when shot. *Scott v. Edinburg*, 346 F.3d 752, 757-58 (7th Cir. 2003). In *Starks* the officer jumped in front of the quickly moving vehicle and opened fire. The Seventh Circuit held that the use of force was unreasonable where the officer "unreasonably created the encounter". *Estate of Starks v. Enyart*, 5 F.3d 230, 234 (7th Cir. 1993). Here, neither officer jumped in front of Wilson's car.

Indeed, in *Manery*, the Seventh Circuit distinguished *Starks* from the situation involving a pinned vehicle and applied qualified immunity. 124 F.4th at 1081.

Plaintiff cites *Lewis*, an unpublished Sixth Circuit case, where the court held that it was unreasonable to use deadly force where the plaintiff, not suspected of any violent crime, was trying to flee a traffic stop. *Lewis v. Charter Twp. of Flint*, 660 F. App'x 339, 343 (6th Cir. 2016). That case also fails to "squarely address" the facts facing Wagner and Peskie in this case. Moreover,  for the qualified immunity analysis, the Seventh Circuit analyzes Supreme Court precedent and published precedent from the Seventh Circuit to determine whether a right was clearly established at the time of violation. *Mason-Funk v. City of Neenah*, 895 F.3d 504, 508–09 (7th Cir. 2018); *Gill v. City of Milwaukee*, 850 F.3d 335, 341 (7th Cir. 2017).

Similarly, Plaintiff cites *Estate of Fields*, where the district court denied summary judgment where the officer used deadly force when the plaintiff was driving away. *Est. of Fields v. Nawotka*, No. 03-CV-1450, 2008 WL 746704, at *5 (E.D. Wis. Mar. 18, 2008). Again, this is distinguishable from this case, as recognized in *Manery*. Moreover, "district court decisions have no weight as precedents and therefore cannot *clearly* establish a constitutional right." *Mason-Funk*, 895 F.3d at 509 quoting *Boyd v. Owen*, 481 F.3d 520, 527 (7th Cir. 2007).

Plaintiff has failed to point to controlling precedent that squarely governs the facts and circumstances that confronted Peskie and Wagner. *Mason-Funk*, 895 F.3d at 509; *Mannery*, 124 F.4th at 1082 n. 17. Peskie and Wagner were not on notice that

their use of force violated any clearly established right, and they are entitled to qualified immunity.

**II.    Based on the undisputed facts, Special Agents Wagner and Peskie's Use of Force Did Not Violate Wilson's Fourth Amendment Rights.**

The Fourth Amendment's "reasonableness" test is "not capable of precise definition or mechanical application." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Rather, its application requires the weighing of the facts and circumstances of each case, including (1) "severity of the crime at issue"; (2) "whether the suspect poses an immediate threat to the safety of the officers or others"; and (3) "whether he is actively resisting arrest or attempting to evade arrest by flight." *Johnson v. Scott*, 576 F.3d 658, 660 (7th Cir. 2009) (citation omitted).

Even under Plaintiff's version of events, accepted as true for the purposes of summary judgment, and coupled with the undisputed facts, Peskie and Wagner's use of force was reasonable under the Fourth Amendment. Plaintiff admits, as outlined above, that he was "hitting the gas", "gunning that car", and "had the pedal to the metal on it" and "going from reverse to forward, rocking those cars back and forth." Wilson therefore admits his hand was on the gear shifter at some point. His version of events is that he made a furtive movement before being shot when he "dove towards the passenger side". There is also no dispute the Halligan tool likely caused Wager to experience forceful impact, a loud noise, shattered glass, and that Wagner fell back with much force several feet away.

Wilson's admitted actions of slamming the gas pedal to rock the vehicles in front of and behind him created an immediate danger to Peskie and Wagner located

right next to Wilson's car. Vehicles themselves can create deadly threats when suspects use them to resist or flee in close proximity to officers on foot. Plaintiff fails to address this case law and therefore concedes it. *See Tolliver v. City of Chicago*, 820 F.3d 237, 245–46 (7th Cir. 2016) (Where plaintiff was driving car back and forth, even at 3 mph, with the potential for rapid acceleration, the "officers in their circumstances would have perceived the car as a deadly weapon that created a threat of serious physical harm."); *Tousis v. Billiot*, 84 F.4th 692, 698 (7th Cir. 2023)(officer in near proximity to a car turning in their direction, reacting within seconds and unsure of driver's intentions, reasonably viewed the vehicle as a potential deadly weapon).

Furthermore, Plaintiff relies heavily on his own testimony that before being shot he "dove towards the passenger side". This furtive movement further supports the reasonableness of Peskie and Wagner's action because it created additional danger to the officers. *Tolliver,* 820 F.3d 237, 246 ("And as Tolliver alleges, as his car moved towards the officers, he fell to his right, under the steering wheel, and essentially disappeared from the officers' sight.")

Finally, even though Peskie and Wagner were ultimately mistaken that Wilson was unarmed, the mistake was reasonable under the circumstances. It is an undisputed fact that Peskie witnessed Wager experience forceful impact, a loud noise, shattered glass, and fell down violently, launched several feet away. This reasonably led Wagner and Peskie to believe that Wagner had been shot. *See e.g.*, *Doxtator,* 39 F.4th 852, 861–65 (7th Cir. 2022) (officers actions reasonable where inmate unarmed but officers believed he could be armed).

Based on these undisputed facts, no reasonable jury could conclude that Agents Wagner and Peskie used unreasonable force. "The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham,* 490 U.S. 386, 396–97. That is exactly what Peskie and Wagner faced, and their actions were reasonable under the totality of the circumstances. Summary judgment must be granted.

## CONCLUSION

For the reasons stated above, Special Agents Wagner and Peskie respectfully request that the Court grant them summary judgment and dismiss all of Wilson's claims with prejudice.

Dated: May 15, 2026

Respectfully submitted,

JOSHUA L. KAUL
Attorney General of Wisconsin

s/Brandon T. Flugaur
BRANDON T. FLUGAUR
Assistant Attorney General
State Bar #1074305

ALEXANDER J. THILLMAN
Assistant Attorney General
State Bar #1137377

Attorneys for Defendants

Wisconsin Department of Justice

11

12

Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-9294 (Thillman)
(608) 266-1780 (Flugaur)
(608) 294-2907 (Fax)
Alexander.Thillman@wisdoj.gov
Brandon.Flugaur@wisdoj.gov